Shantella LEWIS, Respondent,

v.

**BELLEFONTAINE HABILITATION CENTER, Appellant;**

and/or Personnel Advisory Board, State of Missouri, Paul A. Boudreau, Ann C. Gardner, Karen Touzeau, Alvin A. Plummer, and Margrace Buckler, Defendants.

No. WD 61933.

Missouri Court of Appeals, Western District.

Dec. 23, 2003.

Arguing on behalf of Appellant: Greg A. Perry, Asst. Attorney General, Jeremiah W. (Jay) Nixon, Atty. Gen., Jefferson City, MO, joins on the briefs for Appellant.

Arguing on behalf of Respondent: Boris Kaupp, John West Rourke, St. Louis, MO, Terry C. Allen, Jefferson City, MO (co-counsel) join on the briefs for Respondent.

Before HAROLD L. LOWENSTEIN, P.J., JAMES M. SMART, JR., and EDWIN H. SMITH, JJ.

JAMES M. SMART, JR., Judge.

The "appointing authority" of Bellefontaine Habilitation Center, a facility operated by the Missouri Department of Mental Health, appeals a writ of mandamus, which directed the Personnel Advisory Board to entertain the application for attorney's fees of Shantella Lewis. The Personnel Advisory Board (PAB) had earlier ordered Lewis reinstated to her former position at Bellefontaine.[1] The PAB dismissed Lewis' application for fees on the ground that it was not timely filed. Because the circuit court correctly determined that the PAB still had jurisdiction of the fee application, we affirm the writ of mandamus.

### Factual Background

On July 4, 2000, Respondent Shantella Lewis was dismissed from her position as a Developmental Assistant II with Bellefontaine Habilitation Center as a result of an allegation of Class I Neglect. As a state merit system employee, Ms. Lewis appealed her dismissal to the Personnel

---

1. For the sake of convenience, the appellant is sometimes herein referred to as "Bellefontaine," "the agency" or "the appointing authority." Technically, "the appointing authority" is the party appealing the writ. *See*

§§ 630.030 to 630.040 and 36.390 RSMo 2000. The appointing authority in this case was Samir Salib, the acting superintendent of Bellefontaine.

Advisory Board ("PAB"), and a hearing was held.

The PAB issued its decision on December 12, 2000, finding in Ms. Lewis' favor. The PAB disapproved Ms. Lewis' dismissal and directed the appointing authority to reinstate her to her former position and "to pay her all such salary as has been lost by reason of the dismissal." The PAB also ordered the appointing authority to award Ms. Lewis back pay and set forth the statutory formula for calculating the amount of back pay due her based on her date of reinstatement. In its decision, the PAB found that this Court's opinion in *Schulze v. Erickson*, 17 S.W.3d 588, 591 (Mo.App.2000), should not be interpreted to mean that the PAB must adjudge the amount owed before the decision and order are final for purposes of appeal, because the PAB found that such an interpretation "requires an impossibility." As a result of this conclusion, the PAB did not establish a specific dollar amount for back pay because Ms. Lewis' date of actual reinstatement was not yet established.

Bellefontaine did not seek judicial review of the reinstatement determination. Instead, Bellefontaine sent Ms. Lewis a letter on December 19, 2000, advising that she would be going back to work effective January 3, 2001, as a result of the December 12 order. On January 3, Ms. Lewis was returned to her former position. On January 2, 2001, and again on February 15, the appointing authority sent a letter to Ms. Lewis' attorney seeking information required under the statutory formula to determine her back pay.

As the prevailing party, Ms. Lewis filed an application for attorney's fees and costs on January 22, 2001, pursuant to section 536.087, RSMo 2000.[2] She sought $8,007.68 in attorney's fees. On January 29, Bellefontaine moved to dismiss the application on the basis that the PAB lacked jurisdiction to consider the application in that it was filed more than thirty days after the December 12 ruling. Ms. Lewis responded that the application was not untimely, because, based upon *Schulze v. Erickson*, 17 S.W.3d 588 (Mo.App.2000), the December 12 decision was not a "final disposition" of the case within the meaning of section 536.087 because it did not determine the exact amount of back pay due.

On May 9, 2001, the PAB granted the motion to dismiss for lack of jurisdiction, finding that the December 12 order of reinstatement *was* a "final disposition" of the case within the meaning of section 536.087 and that the application was not filed within thirty days of that decision, as required by that statute.

Ms. Lewis filed a petition for judicial review or, in the alternative, a writ of mandamus in the Cole County Circuit Court, challenging that decision. She alleged that the PAB order of December 12 was not a final disposition under section 536.087 and that her application for fees was timely. The circuit court agreed, and issued a writ of mandamus on August 14, 2002. The court found that the attorney's fee application was timely. The court ordered the PAB to consider the application for attorney's fees and to complete its findings of fact and determinations consistent with the court's judgment. Bellefontaine appeals, contending the application for attorney fees was not timely filed within thirty days of the final disposition of the case.

### Standard of Review

■ Generally, mandamus is reviewed on appeal as any other non-jury civil mat-

---

**2.** All statutory references are to Revised Statutes of Missouri, 2000, unless otherwise noted.

ter. *State ex rel. Lupo v. City of Wentz-ville,* 886 S.W.2d 727, 730 (Mo.App.1994). Thus, the judgment of the trial court will be sustained unless no substantial evidence exists to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *State ex rel. Kessler v. Shay,* 820 S.W.2d 311, 314 (Mo.App.1991) (*citing Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976)). Although mandamus can involve matters of discretion, *see State ex rel. Rogers v. Bd. of Police Comm'rs of Kansas City,* 995 S.W.2d 1, 2 (Mo.App. 1999), in this case, as discussed below, the issue is an issue of law. Accordingly, we review to see if the law was correctly applied.

## Reviewability of the Writ

At the outset, we take up the issue of our jurisdiction, raised by Respondent Lewis, who argues that this appeal should be dismissed because the circuit court's writ of mandamus was not a final appeal-able order in that it remanded the matter back to the PAB to consider the applica-tion for attorney's fees and to issue find-ings of fact and conclusions of law after considering the application. Ms. Lewis as-serts that where a cause is remanded back to an administrative body for further pro-ceedings, including the making of further findings of fact, the judgment or order of the court so remanding the case is not final and appealable, citing *Labor & In-dustrial Relations Commission v. Hoff-man,* 825 S.W.2d 874, 876 (Mo.App.1992).

█ Bellefontaine contends that the ap-peal of the circuit court's order and judg-ment, which is the subject of this appeal, is proper and should not be dismissed be-cause the writ itself was a final order. A writ of mandamus is a final appealable judgment where it disposes of all issues and leaves nothing for future determina-tion. *See City of St. Louis v. Hughes,* 950 S.W.2d 850, 852 (Mo. banc 1997). Here, the writ addresses and resolves the legal issue of whether the PAB has jurisdiction to hear and resolve the issues concerning Lewis' application for attorney's fees.

█ Where the circuit court decides an issue of law in a writ of mandamus, its order is final and an appeal is proper. *See Kessler,* 820 S.W.2d at 313–14; *State ex rel. Schaefer v. Cleveland,* 847 S.W.2d 867, 870 (Mo.App.1992). The issue in this case was whether the PAB retained jurisdiction to consider the attorney's fees application. That question is a matter of law and is not dependent on any further findings of the PAB, nor will it change should the PAB hold a hearing to determine whether or not Lewis is entitled to attorney's fees. There is no need for further proceedings or findings by the PAB in order for the court to decide the issue of jurisdiction. Thus, the writ is reviewable by this court. *Kessler,* 820 S.W.2d at 313–14.

## Application for Attorney Fees

Pursuant to section 536.087.4, "[a] pre-vailing party in an agency proceeding shall submit an application for fees and ex-penses to the administrative body before which the party prevailed," and, similarly, "[a] prevailing party in a civil action on appeal from an agency proceeding shall submit an application for fees and ex-penses to the court." "Within thirty days of a final disposition in an agency proceed-ing or final judgment in a civil action," an application for fees and expenses shall be submitted to "the court, agency or commis-sion which rendered the final disposition or judgment" § 536.087.3. When the state ap-peals, no determination of the fee petition will be made until a final decision, no longer reviewable, has been rendered by the court or the underlying merits have been finally determined. § 536.087.4.

Section 536.087 imposes the thirty-day filing period after either a final agency decision or a final court decision. *Davis v. Angoff,* 957 S.W.2d 340, 343 (Mo.App. 1997). When an application for fees and expenses is filed after a final agency decision, the PAB retains jurisdiction, and action on the application *"will be held in abeyance* until the adversary proceeding becomes final." *Id.* at 344 (emphasis added).

Also, subsection 5 allows the court or agency to reduce the amount awarded or deny the award to the extent that the prevailing party "engaged in conduct which unduly and unreasonably protracted the final resolution of the matter." § 536.087.5. And section 536.087.6 requires a written decision on the application to be issued "separate from the judgment or order of the court or the administrative decision which determined the prevailing party," and to include written findings and conclusions. Accordingly, no ruling on attorney's fees can be made until the conclusion of all proceedings.

Ms. Lewis, as a "prevailing party," was required under section 536.087.3 to file her application for attorney's fees with the PAB within thirty days of the "final disposition" of the agency proceeding. The question, then, is whether the December 12 ruling was the "final disposition" of the matter.

### Timeliness of the Application

In Bellefontaine's appeal of the writ, it contends that the application for attorney's fees was not timely filed. Bellefontaine argues that the December 12 order is a "final disposition" within section 536.087.

Bellefontaine states the December 12 ruling ordering reinstatement must be considered final for purposes of appeal, because it was logically impossible for the PAB to establish a specific dollar amount for back pay in its December 12 order. This is so, says Bellefontaine, because, at that time, Ms. Lewis' date of actual reinstatement (in the sense of being physically returned to her duties and back on the payroll) was not yet established.

■ Bellefontaine's argument is based upon its premise that there is a difference between legal reinstatement (meaning the point from which back pay retroactively accrues) and physical reinstatement (meaning the physical return of the worker to the workplace). The *legal* reinstatement is retroactive to the date of dismissal unless the PAB does not allow full back pay to the date of dismissal.[3] Here, back pay is calculated from July 4, 2000 to January 3, 2001.

Pursuant to section 36.390.9, "decisions of [the PAB] shall be final and binding subject to appeal by either party." Although the PAB does not have contempt or other direct power to enforce its judgments, certainly it could apply to the circuit court for enforcement of its orders. *See* § 536.095. Pursuant to section 536.120, the PAB may issue a stay of any part of its orders. Presumably, pursuant to § 36.390.9, the reinstatement of a worker could be stayed during the pendency of an employer's appeal. Bellefontaine takes the position, however, that, with or without a stay order, there is no requirement that the employing unit physically reinstate the worker until all appeals have run their course. Bellefontaine cites no relevant au-

---

**3.** The PAB has discretion as to whether to make the legal reinstatement retroactive to the date of discharge, because section 36.390.5(1) allows the PAB to order the payment to the employee of *"part or all* of such salary as has been lost by reason of such dismissal." If the reinstatement is retroactive to the date of dismissal, the salary begins accruing from the date of dismissal.

thority for that dubious proposition; but in any event, because there was no appeal here, we need not address that issue in this case.

The issue here is whether the December 12 order was a "final disposition." Ms. Lewis says it was not because it left open the matter of the amount of back pay to which Respondent would be entitled. Relying on *Schulze v. Erickson,* 17 S.W.3d 588 (Mo.App.2000), Ms. Lewis argues that the reinstatement order was not final in that it failed to determine a final award amount.

In *Erickson,* this court dismissed, for lack of jurisdiction, an appeal from a PAB order of reinstatement. The court, reviewing its jurisdiction *sua sponte,* held that the PAB order reinstating Mr. Erickson and entitling him to receive back pay was not a final order for purposes of appeal, because "[t]he PAB's order did not state how Mr. Erickson's back pay would be calculated, nor did it adjudge an amount owed." *Erickson,* 17 S.W.3d at 591. In so ruling, the court relied upon *Davis'* holding that "[l]ong established principles of Missouri law provide that a 'final' disposition in an agency proceeding or a civil action occurs whenever the decision disposes of all issues as to all parties and leaves nothing for future determination." 957 S.W.2d at 343.

Although acknowledging this court's opinion in *Erickson,* the PAB, in its December 12 order, stated that it did not need to " 'adjudge an amount owed' before the decision and order is final for purposes of appeal." The PAB said that to do so would require "an impossibility." The impossibility exists, says Bellefontaine, because the board has to know the date of physical reinstatement to determine the amount of back pay. This is supposedly because of the doctrine of mitigation, which allows the employer the opportunity to mitigate the back pay award for earnings the employee received during the time of an appeal while off work from the position in question.

The PAB's interpretation that the holding of *Erickson* does not require the PAB to adjudicate the amount owed before the decision and order is final for purposes of appeal is contrary to the express language of *Erickson. Erickson* stated that "[b]y not ascertaining the amount of [the employee's] back pay, the PAB decided fewer than all legal issues as to his wrongful dismissal claim. Thus, the PAB's order is not a final and appealable order as required under § 36.390.9 for review...." 17 S.W.3d at 592. Bellefontaine, arguing the position of the PAB is, in effect, asking this court to reconsider its decision in *Erickson.* It argues that this court is compelled by the doctrine of mitigation to find that the decision of the PAB ordering reinstatement, but not establishing the amount of back pay, is a final disposition for purposes of § 536.087.3.

### Doctrine of Mitigation

In *Wolf v. Mo. State Training Sch. for Boys,* 517 S.W.2d 138, 144–45 (Mo. banc 1974). the Missouri Supreme Court held that under the "rule of avoidable consequences," the amount of back pay to be awarded must be offset by the amount the employee has earned or reasonably could have earned from other employment while the employee was physically removed from his or her position. The amount of back pay due is to be determined at an administrative evidentiary hearing.[4] *Id.* at 145.

---

**4.** Also, there is a statutory provision that the amount of back pay is to be offset by any amounts the employee has received as unem-

ployment benefits during the period of his dismissal. § 288.381.2; *See DeSilva v. Dir.,*

Were it not for the doctrine of mitigation, the lack of physical reinstatement of the worker during an appeal would not complicate the determination of finality. In *Wolf*, the circuit court reversed the dismissal (which the PAB had approved) and ordered reinstatement. *Id.* The court in *Wolf* did not specifically state whether the mitigating factors would be considered only to the date of the order reinstating the worker, or whether mitigation could continue during an appeal until the worker is finally returned to the workplace.

### "Final Disposition"

Of course, if the appointing authority prevails before the PAB, there are no issues remaining for the PAB to resolve. Thus, the ruling is obviously a "final disposition." If the appointing authority loses, and wishes to appeal, the complication is potentially presented. Prior to *Erickson*, this court often reviewed reinstatement cases in which the PAB ordered the employee "reinstated with back pay." There is no indication in those cases whether the PAB had already, as a part of the orders prior to the appeal, established a specific dollar amount, or even a fixed formula with no disputed factors, for the back pay award. *See, e.g., Div. of Family Servs. v. Cade*, 939 S.W.2d 546 (Mo.App. W.D.1997); *Mo. Dep't of Corr. v. Cheeney*, 926 S.W.2d 939 (Mo.App. W.D.1996); *Anderson v. Lebedun*, 782 S.W.2d 648 (Mo.App. W.D. 1989); *McKenna v. Pers. Advisory Bd.*, 702 S.W.2d 548 (Mo.App. W.D.1985). In those cases, the finality of the agency's decision was not addressed. It is also noted that neither *Erickson* nor *Wolf* considered the issues raised by the possible conflict between the statutory language requiring a final disposition and the requirement of *Wolf* that the doctrine of mitigation be applied.

The agencies sometimes do not *physically* return to the workplace a worker against whom the agency is still actively litigating. It is argued, under *Wolf*, that any time the worker is away from the workplace, the employer may be entitled to mitigation for amounts the employee earned or could have earned working elsewhere during the period of dismissal or suspension. *Wolf*, 517 S.W.2d at 144–45. Relying on this argument, Bellefontaine claims that the PAB order of reinstatement *must, for policy reasons, be considered* final for purposes of appeal, even without a determination of the back pay award, because we cannot know until *after* the appeal what amounts the employer will be entitled to offset against the back pay. This argument, of course, assumes the filing of an appeal; and further assumes that the appointing authority, pursuant to a stay issued by the PAB or by a court, does not physically reinstate the worker to the workplace during the appeal; and further assumes the operation of the doctrine of mitigation.

Although this court recognizes the practical issues raised by the PAB, this case does not require resolution of those issues. In view of the fact that, here, the appointing authority chose *not* to appeal the order of reinstatement, Ms. Lewis was promptly directed to be physically back to work and back on the payroll as of January 3, 2001, a few weeks after the order of reinstatement. In this case, there was absolutely nothing to prevent the PAB from promptly convening an administrative hearing to determine the amount of the back pay award covering the period from July 4, 2000 (the date of dismissal and in this case the date of *legal* reinstatement) to January 3, 2001 (the date of *physical* and *payroll* reinstatement). Thus, there could be no possibility

*Div. of Aging, Dep't of Soc. Servs.*, 714 S.W.2d     690, 693 (Mo.App.1986).

of mitigation factors accruing after January 2, 2001. Whatever effect the doctrine of mitigation may have in other contexts, it is not a factor here. Accordingly, we will consider the order of reinstatement, by itself, without the back pay award, to be less than a "final disposition" of the matter within the meaning of the attorney's fee statute, § 536.087.3. The application for attorney's fees was timely, having been filed before the award of back pay was calculated, and thus before the PAB disposition was final.

We conclude that the writ court was correct in determining as a matter of law that the PAB has jurisdiction of the application for attorney's fees. Accordingly, we will not disturb the writ of mandamus issued by the circuit court.

LOWENSTEIN and SMITH, JJ., concur.